422 A.2d 832

**COMMONWEALTH of Pennsylvania**

v.

**Emanuel GARDNER, Jr.**

Superior Court of Pennsylvania.

Submitted June 13, 1979.

Filed Oct. 17, 1980.

Arthur J. King, Assistant Public Defender, Norristown, for appellant.

John J. Burfete, Jr., Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUG-

**SUGERMAN, Judge:**

Appellant was found guilty at a bench trial of Possessing Instruments of Crime[1] and Implements of Escape.[2] Post—trial motions were filed, argued and denied, and Appellant was sentenced upon each conviction to serve a term of imprisonment of not less than six months nor more than two years. The sentences were to be served concurrently with each other, but consecutively with the sentence being served by Appellant at the time of the offenses.

On appeal, Appellant asserts a violation of the provisions of Pa.R.Crim.P. 1100 (hereinafter, "Rule 1100"), and questions the sufficiency of the evidence to support his convictions. In view of our disposition, we consider only the first of these issues.

### I.

On July 21, 1976, a criminal complaint was filed against Appellant charging him with the instant offenses. By the terms of Rule 1100(a)(2) the Commonwealth was required to try Appellant not later than January 17, 1977. The case was listed for trial on January 3, 1977, and the Commonwealth was prepared for trial on that date. Neither Appellant nor his trial counsel[3] were prepared, however, as counsel had not then fully interviewed Appellant and had not interviewed any of the eight or nine prisoner—witnesses Appellant intended to call at trial. Appellant's counsel, therefore, requested a continuance, and in accordance with Montgomery County practice, caused to be completed a printed form styled "Application for Trial Postponement." In addition to reciting the reasons for the request, the form contained the following printed paragraph:

ERMAN of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

1. 18 Pa.C.S. § 907.

2. 18 Pa.C.S. § 5122.

3. Although Appellant is represented by new counsel in this appeal, both trial counsel and appellate counsel are members of the Montgomery County Public Defender's office.

"IV. I have been advised and I am aware of the implications and consequences of the above application and I (have/do not have) objection to the continuance. I am further aware of my right to a prompt trial within 180 days from the day of the Complaint under Pa. Rules of Crim.P. Rule 1100. I understand by requesting/agreeing to a continuance I hereby waive my rights to a prompt trial under Rule 1100." [4]

The defendant's signature was affixed directly beneath the quoted paragraph. Finally, under the printed line "V. Action taken by the Court:", Appellant's counsel caused to be inserted by typewriter, the following:

"Please relist for February 7, 1977."

The form was prepared by counsel's secretary, and counsel explained its terms to Appellant who then signed it. The prosecutor next signed the form and it was then presented to the Court. Judge BROWN affixed his signature to it without adding any further provisions, and the case was thereupon continued.[5] On February 7, 1977, the case was placed in what may be best described as a "ready pool" in the Assignment Room of the Montgomery County Court Administrator and was ultimately reached for trial on March 8, 1977.

On that date, immediately prior to trial, Appellant filed an application to dismiss pursuant to Rule 1100(f). At the hearing on Appellant's application to dismiss, he contended through counsel[6] that (1) he was "forced" to waive the provisions of Rule 1100 against his will in order to obtain a

**4.** Apparently, the practice in Montgomery County prevailing at the times relevant to the case at bar required that every defendant requesting a continuance was also required at the same time to waive the provisions of Rule 1100. If such waiver was not tendered by a defendant, the District Attorney would oppose the request and the lower court would not grant the continuance. N.T. 36.

**5.** There is no transcript or other record of these proceedings, apart from the form itself.

**6.** Appellant offered no testimony, and the hearing was essentially a colloquy between defense counsel and the court. N.T. 25–28 (March 8, 1977).

continuance, and (2) the waiver included only the period from January 3, 1977, the date it was executed, until February 7, 1977, the date appearing on the form as the date upon which the case was to be relisted.

The hearing judge found that Appellant was not "compelled" to execute the waiver, further found the period between January 3, 1977 and March 8, 1977 was not "an inordinate extension of time," and refused Appellant's application to dismiss.

As earlier observed, Appellant was thereupon tried and found guilty. Post trial motions were filed, argued and denied, and Appellant appealed to this Court. On appeal, Appellant raised the instant Rule 1100 issue, contending that he waived only that period between January 3, 1977 and February 7, 1977. Finding the record to be incomplete as the waiver executed by Appellant was not presented to us, we remanded for an evidentiary hearing. *Commonwealth v. Gardner*, 253 Pa.Super. 233, 384 A.2d 1318 (1978). In our opinion, we said:

"It is apparent that the resolution of Appellant's Rule 1100 claim hinges on an interpretation of the scope of the January 3, 1977 waiver. We must determine whether, in signing the waiver form, Appellant knowingly consented to a complete waiver of his Rule 1100 rights, *Commonwealth v. Myrick*, 468 Pa. 155, 360 A.2d 598 (1976) or whether Appellant consented only to a waiver of the period of times specified on the form when he signed it. *Commonwealth v. Coleman*, 241 Pa.Super. 450 fn.1, 361 A.2d 870 fn.1 (1976)." *Id.*, 253 Pa.Super. at 236, 384 A.2d at 1320.

We also directed the lower court to reconstruct the circumstances surrounding Appellant's waiver in order to ascertain its scope, and we suggested to the lower court that it "focus its inquiry on the contents of the form (if the original cannot be produced) and whether a date certain for the relisting of the trial was specified on the form before Appellant affixed his signature." *Id.*, 253 Pa.Super. at 237, 384 A.2d at 1320.

Pursuant to our remand, the lower court held an evidentiary hearing, and thereafter filed an opinion finding (1) the Appellant knowingly executed the waiver with the knowledge that the notation "Please relist for February 7, 1977" did not "guarantee" that he would be tried on or before that date, and that such date was not, therefore, "a date certain," and (2) that Appellant's case was indeed "relisted" on February 7, 1977, in accordance with the waiver. The court also found the following:

"By agreeing that this case be relisted on February 7, 1977 the defendant herein agreed to a trial date which was beyond the Rule 1100 time limit, as did the defendant in [*Commonwealth v.*] *Hickson* [235 Pa.Super. 496, 344 A.2d 617 (1975)]. Accordingly defendant cannot now complain that his rights under Rule 1100 have been violated since he has thereby waived those rights."

The court finally found:

"Thus, it having been established that defendant's waiver was an informed and voluntary act by which he agreed to a trial date beyond the 180 day limit, he cannot complain on appeal that his rights under Rule 1100 were violated, since he was afforded a prompt trial thereafter under all the circumstances."

Appellant then filed the instant appeal and argues here, again, that he waived the provisions of Rule 1100 only for the period January 3, 1977 to February 7, 1977, and as trial did not commence until March 8, 1977, some 29 days later, and 40 days after the expiration of the period mandated by Rule 1100(a)(2), the charges must be dismissed.

It is clear that as Appellant's trial commenced 40 days beyond the time required by Rule 1100(a)(2), and as the Commonwealth neither sought nor obtained an order for extension of time pursuant to Rule 1100(c), that period of delay must be excluded from computation of the 180 day period, in order for the Commonwealth to prevail.

From the record made at the evidentiary hearing, we observe that under the Montgomery County practice prevailing at the date in question, 25 to 30 cases ready for trial

were placed upon an assignment board in the assignment room, an office under the supervision of the Montgomery County Court Administrator. The order of placement or priority was determined by the Court Administrator alone.[7]

On January 3, 1977, the date the defense continuance was requested and granted, the case at bar occupied a position of priority on the assignment board and was in position to be tried that day. When the continuance was granted, however, again, in accordance with local practice, the case was removed from the assignment board and placed and remained in an "inactive file" in the office of the Court Administrator until February 7, 1977, the date appearing on the form signed by Appellant.

On the latter date, the case was again placed by the Court Administrator on the assignment board, at the bottom of the list of the 25 to 30 cases then ready for trial. As all judges, courtrooms and assistant district attorneys were occupied for the entire period, the case was not assigned to a courtroom until March 8, 1977, the date trial commenced.

In *Commonwealth v. Myrick*, 468 Pa. 155, 360 A.2d 598 (1976) the Supreme Court of Pennsylvania considered the question of whether a defendant could waive the provisions of Rule 1100. In reaching the conclusion that he could, the court analogized the requirements for a valid waiver of a defendant's rights under Rule 1100 to the formal requirements for a valid waiver of other important rights, and said:

"All of these formal requirements for a waiver are intended to assure one thing—that the decision to waive these rights is the informed and voluntary act of the defendant and can be shown to be such by reference to the record. So long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity.

7. We have previously said the Court Administrator *and* the prosecutor are *both* responsible for management of the court calendar. *Commonwealth v. Smith*, 269 Pa.Super. 424, 429, 410 A.2d 329, 332 (1978); *Commonwealth v. Metzgar*, 249 Pa.Super. 107, 115, 375 A.2d 781, 785 (1977) and see *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976).

Absent this record indication of validity, the waiver will be ineffective. Moreover, these are merely formal indications of validity. In any waiver situation, the defendant may still attempt to prove that the waiver is invalid by showing that it was unknowing, unintelligent or involuntary." *Id.*, 468 Pa. at 160, 360 A.2d at 600.

The court also held that the burden was upon the Commonwealth to prove that a defendant's waiver of Rule 1100 rights was knowing, intelligent and voluntary. *Id.*, 468 Pa. at 160, 360 A.2d at 600; *Commonwealth v. Waldman*, 484 Pa. 217, 233, 398 A.2d 1022, 1030 (1979).

At bar, the lower court, considering the question of whether such language constituted an indefinite waiver of Appellant's Rule 1100 rights, during the pretrial hearing upon Appellant's application to dismiss, observed:

"THE COURT:

Well, certainly his waiver is not for all eternity." N.T. 27.

The lower court then apparently interpreted the language "Please relist for February 7, 1977," appearing on the form, not as a date certain for trial, but rather as a direction to the Court Administrator to relist the case on that date for trial within a "reasonable time" thereafter, in chronological order, as a courtroom and judge became available, in accordance with the usual Montgomery County practice.

The Commonwealth at bar first argues that Appellant has waived the right to assert his Rule 1100 contention by signing an "indefinite" waiver. We quickly dispose of this argument by referring to *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1979), a case also originating in Montgomery County. Construing a waiver nearly identical to that before us,[8] the Supreme Court said:

8. The pertinent clause in the form construed in *Coleman* follows: "I am aware and have been advised of the implications and consequences of the above application and (have/do not have) objection to the continuance. I am further aware of my right to a speedy trial and that a continuance shall cause a delay in having said criminal charges disposed of by the Court." *Id.*, 477 Pa. at 406, 383 A.2d at 1271.

"We believe . . . that the form signed by Appellee has no legal significance regarding an alleged waiver of the Rule 1100 rights.

.        .        .        .        .

Regarding any rights guaranteed by either the United States Constitution or the Pennsylvania Constitution [the right to a speedy trial], for a waiver of those rights to be valid, the Commonwealth must prove by a preponderance of the evidence that the alleged waiver was intelligently made." *Id.*, 477 Pa. at 406–407, 383 A.2d at 1271.

■ We must thus consider, as we said in our opinion remanding the matter, whether in signing the form, Appellant knowingly and intelligently[9] consented to a complete waiver of his Rule 1100 rights, or whether he consented only to a waiver limited to the period January 3, 1977 to February 7, 1977, *Commonwealth v. Gardner*, supra 253 Pa.Super. at 236, 384 A.2d at 1320.

Appellant, his trial counsel, and the prosecutor testified at the evidentiary hearing convened pursuant to our remand, and from the record made at the hearing we note the following:

Appellant was incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania, until some time in December, 1976, when he was transferred to Graterford in anticipation of trial. Presumably for the reason that he had earlier allegedly attempted to escape the latter institution, he was placed in the behavioral adjustment unit ("the hole")

9. The record made below at the evidentiary hearing following our remand clearly reflects a policy in effect in Montgomery County at the time this case was tried, mandating a refusal of the Court to grant a defense request for a continuance in all cases and regardless of the reasons advanced, unless the Defendant waived his Rule 1100 rights. The policy was apparently so well known that the lower court took judicial notice of it. N.T. 44. Although the grant or refusal of a request for a continuance is generally within the sound discretion of the lower court, *Commonwealth v. Kishbach*, 247 Pa. Super. 557, 373 A.2d 118 (1976), *Commonwealth v. Warner*, 209 Pa.Super. 215, 225 A.2d 98 (1966), Pa. R.Crim.P. 301, one must seriously consider whether a waiver of Rule 1100 rights under such circumstances would in all cases be considered "voluntary." The issue is not before us, however, and we do not reach it.

at Graterford awaiting trial upon the instant charges and believed that he would be incarcerated in "the hole" until his trial was concluded.

Appellant further testified that he was not prepared to go to trial on January 3, 1977, as his counsel had not interviewed him or his witnesses, and he therefore desired a continuance. Appellant testified that in response to his request, defense counsel prepared the form in question and reviewed it with him.

At the evidentiary hearing the following colloquy occurred between Appellant's post trial counsel and Appellant:

"BY MR. DITTER:

Q Was there some specific reason that you know of that those words, 'please relist for February 7, 1977,' were on this form?

A [BY APPELLANT] Yes. I had indicated to Mr. Cole [Appellant's trial counsel] that I did not desire to waive my Rule 1100 rights for a time and that I wanted a date specific to go to trial. Mr. Cole said that he would see that that was taken care of.

Q All right. So, was it your understanding that you were waiving your rights for all time or merely for the period until—

A Just until February 7th."

And on cross–examination by the Assistant District Attorney:

"I'm going to ask you specifically to read this paragraph right here. (Indicating).

A [BY APPELLANT] Yes, I see that.

Q What do the last few words say where it says, 'I hereby . . .'

A You want me to read it?

Q Yes. You might as well.

A 'I hereby waive my rights to a prompt trial under Rule 1100.'

Q You read that?

A Yes, I did.

Q   And you signed that document?

A   Pardon me sir?

Q   You read that and signed that document?

A   I read that and I signed that document after I was assured that the trial date would be on February 7th.

Q   How could you be assured that the trial date would be on February 7th?

A   Because it says at the bottom to relist for February 7th.

Q   Did Mr. Cole assure you that the trial would be February 7th?

A   Well, yes.  Yes.

Q   Did he indicate to you that he had control over when the trial would take place?

A   Well, no, he didn't necessarily indicate that he had control.  He said that this was a matter that he would have to discuss with the Court.

Understand this, first of all, Mr. Cole did not bring the waiver directly to me when we first discussed the continuance.  He brought it to me after I intimated that I didn't want to waive my rights to Rule 1100 and I wanted a date specific.  When I read it and I read that there was a date specific, then I signed it.  At least this is what was in my mind."

And again:

"Q   . . . When you signed this document you didn't make any notation on it as you signed it that you were waiving your Rule 1100 rights only to February 7th, did you?

A   I was ignorant to the fact that I was allowed to do so.  My understanding was that that was the specific date that it would be held."

Asked the reason he was concerned about his Rule 1100 rights at the time he was shown the form, Appellant responded:

"A   Because I don't want to be sitting in Graterford in the hole all that time waiting to be brought to trial.  At that time I was in the hole and I was concerned about the delay that would occur if I signed an unlimited waiver."

Appellant's trial counsel testified that Appellant and he discussed the need for a continuance, and he recalled that:

"A ... as a result of my discussion Mr. Gardner realized that there was absolutely no way that we could go to trial that day. There were several witnesses that were key to the matter that must be interviewed. I explained to Mr. Gardner the situation and talked about a continuance.

Mr. Gardner's primary concern, as he mentioned, was that he not be left to languish in the hole an indefinite period of time and the case listed way in the future. He instructed me at that point that the only way he would sign a continuance was on the basis if it was for a date or certain or what we thought would be a date certain."

Referring to the language "Please relist for February 7, 1977", inserted on the form at trial counsel's instructions, counsel testified:

"... The words were used specifically with the intention that the case would be started at that point, go into the Courtroom at that point, or shortly thereafter or as soon as reasonably possible."

and finally:

"Q [BY THE ASSISTANT DISTRICT ATTORNEY] All right. Now, did Mr. Gardner indicate to you any reluctance to sign this form prior to that or before any language like that was put on?

A He indicated he was not going to do it, because he didn't want to sit in the hole or B.A.U."

Trial counsel also testified that he used the specific wording on the form as he believed such was the only language the court would approve.

We have carefully considered the interpretation of the words, "Please relist for February 7, 1977," and conclude that a fair reading of that phrase by one neither a semanticist nor more familiar with the procedures then employed by the Montgomery County Court Administrator could quite properly assume that the trial was to commence on February 7, 1977.

In sum, our review of the record made at the evidentiary hearing below, in combination with our interpretation of the quoted phrase, convinces us that the waiver executed by Appellant was of limited scope, and that the Commonwealth failed to establish by a preponderance of the evidence that Appellant knowingly and intelligently waived the provisions of Rule 1100(a)(2) beyond February 7, 1977.

Accordingly, there may be excluded from the 180–day period, mandated by Rule 1100(a)(2), 35 days in all. Bearing in mind that January 17, 1977 was the run date, trial should have commenced not later than February 21, 1977. As trial did not commence until March 8, 1977, some 15 days thereafter, Rule 1100(a)(2) was violated.

The order of the lower court is accordingly reversed, the judgment of sentence is vacated, and appellant is discharged.